# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TINA GEORGIA BODNAR,**

**Plaintiff,**

**v.**                                          **Case No:  6:12-cv-248-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

# MEMORANDUM OF DECISION

Tina Georgia Bodnar (hereafter "Claimant"), appeals to the District Court from the Commissioner of Social Security's (hereafter "Commissioner") final decision denying her application for benefits (hereafter "Application"), which alleged a disability onset date of January 14, 2009.  Doc. No. 1.[1]  For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   MEDICAL AND OPINION EVIDENCE

### A.  Ayesha Ahmar, M.D.

The record contains treatment notes from Ayesha Ahmar, M.D., from April 2007 to December 2008.  R. 257-58, 266-87.  Although Dr. Ahmar's notes reflect that her physical examinations of Claimant were generally normal, she consistently assessed Claimant with anxiety, depression, neck pain and back pain.  R. 257-58, 266-87.  Dr. Ahmar treated Claimant with medication.  R. 257-58, 266-87.  On December 29, 2008, Dr. Ahmar wrote a letter stating

---

[1]  In her Application, Claimant alleged a disability onset date of December 2, 2006.  R. 125, 128.  At the hearing, Claimant indicated that her disability onset date was January 14, 2009.  R. 42.  In his decision, the ALJ likewise indicated that Claimant's disability onset date was January 14, 2009.  R. 18.  Claimant does not contest that finding.

that Claimant can only work twenty to twenty-five hours per week due to lower back and neck pain, as verified by a recent MRI.[2]  R. 294.

On March 6, 2009, Dr. Ahmar completed a mental status report.  R. 295-96.  Dr. Ahmar indicated that Claimant's increased back pain causes her to experience increased anxiety and decreased concentration.  R. 295.  Dr. Ahmar also indicated that Claimant's back pain slows her thought process and decreases her ability to problem solve.  R. 295.  Dr. Ahmar noted that Claimant's ability to follow orders is diminished, secondary to her decreased concentration and persistence.  R. 296.  Dr. Ahmar diagnosed Claimant with non-operable degenerative disc disease in her cervical, thoracic and lumbar spine with radiculopathy, chronic pain, and generalized anxiety.  R. 296.  Dr. Ahmar stated that Claimant's increased stress causes her to have a breakdown and prevents Claimant from completing tasks due to diminished coping skills. R. 296.  Dr. Ahmar opined that Claimant's chronic pain, anxiety and depression prevent her from working a normal workday or work week.  R. 296.

**B.  O.R. Hunt, M.D.**

O.R. Hunt, M.D., has treated Claimant since April 21, 2009.  R. 345.  Dr. Hunt's treatment notes are both sparse in number and content, primarily consisting of prescriptions.  *See* R. 437-43, 457-58, 461-64.  The treatment notes from May 19, 2009 to July 29, 2010, document Claimant's complaints of swollen lymph nodes, back pain, leg cramps and left hip pain.  R. 406, 435.  On October 5, 2010, Dr. Hunt completed a form that was submitted to an automobile insurance carrier.  R. 450.  Dr. Hunt indicated that Claimant suffered a chest contusion after an accident.  R. 450.  Dr. Hunt indicated that Claimant is disabled from degenerative disc disease in her cervical and lumbosacral spine, a permanent condition, and that the accident aggravated this condition.  R. 450.  Dr. Hunt's November 18, 2010, and January 2, 2011, treatment notes

---

[2]  MRI stands for magnetic resonance imaging.

document Claimant's complaints of increased stress and pain, inability to drive on some days, and use of a neck brace, heating pad and TENS unit treatments.  R. 459.[3]  Dr. Hunt noted that Claimant's report of increased stress and pain could be caused by the cold weather and prescribed Ultram.  R. 459-60.

On April 29, 2009, Dr. Hunt completed a physical residual functional capacity questionnaire.  R. 345-49.  Dr. Hunt diagnosed Claimant with degenerative disc disease in her cervical and lumbar spine, indicating this condition is permanent.  R. 345.  Dr. Hunt indicated that Claimant suffers from chronic pain in her upper extremities, lower back and legs.  R. 345.  Dr. Hunt also indicated that Claimant has pain in her left shoulder on adduction, rotation and abduction.  R. 345.  Dr. Hunt stated that Claimant's impairments can be expected to last at least twelve months.  R. 345.  Dr. Hunt identified somatoform disorder and anxiety, along with emotional factors, as conditions that affect Claimant's physical condition, symptoms and functional limitations.  R. 346.

Dr. Hunt indicated that Claimant's pain and other symptoms frequently interfere with the attention and concentration she needs to perform even simple tasks.  R. 346.  Dr. Hunt opined that Claimant can sit or stand an hour and a half at a time, and can sit or stand/walk less than two hours in an eight-hour workday.  R. 346-47.  Dr. Hunt stated that, in an eight-hour workday, Claimant needs to walk around for ten or eleven minutes every ten to fifteen minutes.  R. 347.  Dr. Hunt indicated that Claimant would frequently need to take unscheduled ten to twenty-five minute breaks during an eight-hour workday.  R. 347.

Dr. Hunt opined that Claimant can rarely lift and carry less than ten pounds and never ten pounds or more.  R. 347.  Dr. Hunt indicated that Claimant can only occasionally look up or down, turn her head left or right, and hold her head in a static position.  R. 348.  Dr. Hunt

---

[3] TENS stands for transcutaneous electrical nerve stimulation.

determined that Claimant can occasionally twist, rarely stoop or bend, rarely crouch/squat, rarely climb ladders, and rarely climb stairs.  R. 348.  Dr. Hunt indicated that Claimant has significant limitations reaching, handling or fingering, such that Claimant can grasp, turn or twist objects twenty percent (20%) of the time, perform fine manipulative movements twenty percent (20%) of the time and reach five percent (5%) of the time.  R. 348.  Dr. Hunt opined that Claimant's impairments produce good and bad days, and Claimant would need to miss more than four days of work per month.  R. 348.

On November 16, 2009, Dr. Hunt completed a cervical spine residual functional capacity questionnaire.  R. 424-28.  Dr. Hunt diagnosed Claimant with early degenerative disc disease at C5-6, indicating her prognosis was poor and would only get worse over time.  R. 424.  Dr. Hunt indicated that Claimant experiences chronic parasthesia, as well as tenderness, muscle weakness, chronic fatigue, sensory changes, impaired sleep and reduced grip strength.  R. 424.  Dr. Hunt stated that Claimant's range of motion was limited to ninety percent (90%) for extension and flexion, eighty percent (80%) for rotation, and sixty percent (60%) for bending.  R. 424.  Dr. Hunt noted that Claimant occasionally experiences severe headaches, lasting one or two hours, in her occipital and frontal regions that result in weight change, impaired sleep, exhaustion and mood changes.  R. 425.  Dr. Hunt indicated that Claimant's impairments can be expected to last at least twelve months.  R. 425.  Dr. Hunt identified depression, anxiety, psychological factors, and emotional factors as affecting Claimant's physical condition, symptoms and functional limitations.  R. 425-26.

Dr. Hunt indicated that Claimant's pain and other symptoms constantly interfere with the attention and concentration she needs to perform even simple tasks.  R. 426.  Dr. Hunt opined that Claimant can walk one or two blocks before needing to rest or experiencing severe pain, can

sit or stand thirty minutes, and can sit or stand/walk less than two hours in an eight-hour workday. R. 426-27. Dr. Hunt repeatedly indicated that Claimant cannot work. R. 426-27. Dr. Hunt also indicated that Claimant occasionally needs to use a cane or other assistive device when standing or walking. R. 427.

Dr. Hunt opined that Claimant can rarely lift and carry less than ten pounds and never ten pounds or more. R. 427. Dr. Hunt indicated that Claimant can rarely look up, and can occasionally look down, turn her head left or right, and hold her head in a static position. R. 427. Dr. Hunt determined that Claimant can rarely twist and can never stoop or bend, crouch/squat, climb ladders, and climb stairs. R. 428. Dr. Hunt indicated that Claimant has significant limitations reaching, handling or fingering, such that Claimant can grasp, turn or twist objects fifty percent (50%) of the time, perform fine manipulative movements thirty percent (30%) of the time and reach ten percent (10%) of the time. R. 428. Dr. Hunt opined that Claimant's impairments produce good and bad days, and Claimant would need to miss more than four days of work per month. R. 428. Dr. Hunt also indicated that Claimant had pre-existing pain prior to April 21, 2009. R. 428.

On June 15, 2010, Dr. Hunt completed a fibromyalgia medical source statement. R. 430-33. Dr. Hunt indicated that Claimant meets the criteria for fibromyalgia and also suffers from chronic degenerative disc disease that has a poor prognosis and is permanent in nature. R. 430. Dr. Hunt noted that Claimant is fragile, only weighing 87 pounds, and suffers from multiple tender points, chronic fatigue, morning stiffness, muscle weakness, anxiety, panic attacks, depression, chronic fatigue syndrome, frequent and severe headaches, and numbness and tingling. R. 430. Dr. Hunt indicated that Claimant suffers pain in her lumbosacral spine, cervical spine, thoracic spine, shoulders, arms, hands, fingers, hips, knees, ankles and feet. R.

431.  Dr. Hunt stated that the pain is precipitated by stress, fatigue, cold, static position and movement/overuse, and migrates over her body on a daily basis.  R. 431.  Dr. Hunt indicated that emotional factors contribute to the severity of Claimant's symptoms and functional limitations, and she experiences nausea from taking Lortab.  R. 430-31.

Dr. Hunt stated that Claimant's chronic pain prevents her from engaging in a competitive work situation.  R. 431. Dr. Hunt opined that Claimant can sit or stand between zero and fifteen minutes, and can sit or stand/walk less than two hours in an eight-hour workday.  R. 431.  Dr. Hunt indicated that Claimant would need to walk around for five minutes every one to fifteen minutes in an eight-hour workday.  R. 432.  Dr. Hunt also indicated that Claimant does not need a cane or other assistive device when standing or walking.  R. 432.  Dr. Hunt stated that Claimant would need to take many unscheduled breaks during a workday.  R. 432.

Dr. Hunt opined that Claimant can rarely lift and carry less than ten pounds and never ten pounds or more.  R. 432.  Dr. Hunt determined that Claimant can rarely twist and can never stoop or bend, crouch/squat, climb ladders, and climb stairs.  R. 432.  Dr. Hunt indicated that Claimant can occasionally look down and rarely look up, turn her head left or right, and hold her head in a static position.  R. 432.  Dr. Hunt indicated that Claimant has significant limitations reaching, handling or fingering, such that Claimant can grasp, turn or twist objects, perform fine manipulative movements, and reach ten percent (10%) of the time.  R. 433.  Dr. Hunt opined that Claimant is incapable of performing even low stress work, her impairments produce only bad days, and Claimant would need to miss multiple days of work per month.  R. 433.

On March 29, 2011, Dr. Hunt rendered another residual functional capacity opinion.  R. 475-77.[4]  Dr. Hunt diagnosed Claimant with degenerative disc disease.  R. 475.  Dr. Hunt

_____

[4]  This opinion was submitted to the Appeals Council as new and material evidence after the ALJ issued his decision.  R. 474.

indicated that Claimant suffers from chronic daily pain in her arm, shoulders, low back and legs. R. 475. Dr. Hunt stated that depression, somatoform disorder, anxiety, psychological and emotional factors affect Claimant's symptoms, functional limitations and physical condition. R. 475. Dr. Hunt opined that Claimant can sit or stand between zero and fifteen minutes, can sit or stand/walk less than two hours in an eight-hour workday, and is unable to work. R. 475-76.

Dr. Hunt opined that Claimant can rarely lift and carry less than ten pounds and never ten pounds or more. R. 476. Dr. Hunt determined that Claimant can rarely twist and can never stoop or bend, crouch/squat, climb ladders, and climb stairs. R. 476. Dr. Hunt indicated that Claimant has significant limitations reaching, handling or fingering, such that Claimant can grasp, turn or twist objects, perform fine manipulative movements, and reach ten percent (10%) of the time. R. 477. Dr. Hunt opined that Claimant is incapable of performing even low stress work because of her chronic pain and depression. R. 477. Dr. Hunt indicated that Claimant would need to miss more than four days of work per month. R. 477. Dr. Hunt stated that Claimant is physically and emotionally unable to be gainfully employed. R. 477.

### C.  Edmund Molis, M.D.

On September 24, 2009, Edmund Molis, M.D., a non-examining state consultant, completed a physical residual functional capacity assessment, diagnosing Claimant with degenerative joint disease in the neck and back, and a torn tendon in her left shoulder. R. 381-88. Dr. Molis opined that Claimant can occasionally lift and/or carry twenty pounds and ten pounds frequently. R. 382. Dr. Molis indicated that Claimant can sit, stand and/or walk six hours in an eight-hour workday. R. 382. Dr. Molis determined that Claimant's ability to push and/or pull is unlimited within the lifting restrictions noted above. R. 382. Dr. Molis opined that Claimant can frequently climb ramps and stairs, and balance. R. 383. Dr. Molis indicated that

Claimant can occasionally stoop, kneel, crouch, crawl and climb ladders, ropes and scaffolds.  R. 383.  Dr. Molis opined that Claimant is limited to frequent reaching in all directions with her left shoulder, but otherwise has no limitations handling, fingering or feeling.  R. 384.  Dr. Molis found that Claimant has no visual or communicative limitations, and her only environmental limitation is avoiding concentrated exposure to vibration.  R. 384-85.

## II.   ADMINISTRATIVE PROCEEDINGS

On December 18, 2008, Claimant filed her Application.   Doc. No. 128-31.   The Application was denied initially and on reconsideration.  R. 76-77.  Claimant requested a hearing before an administrative law judge (hereafter "ALJ") and the hearing was held on January 27, 2011.  R. 34-73, 89.  At the hearing, Claimant testified that she is widowed and lives with her minor son.  R. 38.  Claimant stated that she drives a little, and friends and neighbors help her get around town.  R. 38.  Claimant reported her past work as being an assistant at a daycare, retail sales at a department store, a clerk in the probate division of the Volusia County clerk's office and receptionist.  R. 38-41.  Claimant testified that she last worked in 2009, and has not worked or volunteered since.  R. 42.

Claimant testified that she cannot work because her back condition causes numbness in her spine, legs and hands.  R. 43.  Claimant stated that she wears a neck brace, as prescribed by Dr. Hunt, because "when my neck starts sagging it pulls on my spine."  R. 43.  Claimant testified that Dr. Hunt tries to keep her comfortable because her bones are deteriorating due to her disc disease and there are no other treatments or surgical options available.  R. 44.  Claimant stated that she has not had any injections or physical therapy to help with her pain.  R. 44.  Claimant indicated that her medication helps and she does not experience any side effects.  R. 45.

Claimant testified that her fibromyalgia, as diagnosed by Dr. Hunt, makes wearing clothing uncomfortable and her pain worse when she is under high stress.  R. 47.  Claimant indicated that her pain has progressively worsened over time and three times a day, when it is time to take her next dose of medication, her pain is an eight on a scale of ten.  R. 46, 49.  Otherwise, the medications reduce her pain to a two or three on a scale of ten.  R. 55-56.  Claimant testified that she easily loses focus due to her pain and trying to stay comfortable.  R. 56.

Claimant testified that she can walk less than a block, stand less than five minutes, lift less than five pounds and cannot sit for very long.  R. 45.  On a typical day, Claimant rests on a heating pad and walks around the house to keep the numbness out of her legs and hands.  R. 46.  Claimant helps her son fix breakfast, eats a sandwich for lunch, but never cooks a full meal.  R. 54.  Claimant also indicated that her son helps her with the laundry because she has problems loading clothes into and out of the dryer.  R. 55.

The vocational expert classified Claimant's past work as cosmetics and toiletries salesperson, receptionist, childcare leader, and town clerk.  R. 66-69.  The ALJ asked whether a person of claimant's age, educational background and vocational expert could work as a receptionist or town clerk given the following additional restrictions:  limited to sedentary work; can occasionally climb stairs, balance, stoop, kneel and crouch; can never climb ropes, ladders or scaffolds; can never crawl; and must avoid concentrated exposure to vibration and hazards.  R. 71.  The vocational expert testified that such a person could work as a receptionist and town clerk.  R. 72.  The vocational expert indicated that such a person could not sustain competitive employment if the person's pain interfered with her concentration more than twenty-five percent (25%) of the time.  R. 72.

On February 10, 2011, the ALJ issued his decision.  R. 18-26.  The ALJ found that Claimant suffers from the severe impairments of degenerative disc disease and degenerative joint disease.  R. 20.  The ALJ found that Claimant's depression and anxiety are non-severe because they do not cause more than a minimal limitation in Claimant's ability to perform basic mental work activities.  R. 20.  The ALJ determined that Claimant has the residual functional capacity (hereafter "RFC") to perform a reduced range of sedentary work with the following restrictions: can lift and carry ten pounds frequently; can sit six hours in an eight-hour workday; can stand and walk two hours in an eight-hour workday; can occasionally climb stairs, balance, stoop, kneel and crouch; can never climb ladders, ropes or scaffolds, or crawl; and must avoid concentrated exposure to vibration and hazards.  R. 21-22.

In making the RFC determination, the ALJ acknowledged that the "diagnostic studies have shown some degenerative disc disease," but noted they did not indicate "nerve root or cord involvement or stenosis."  R. 24. The ALJ indicated that Claimant's "physical examinations have been largely benign, showing full muscle strength and intact sensation."  R. 24.  The ALJ further noted that Claimant's treatment has been conservative, consisting only of pain medications but no injections, physical therapy or recommendation for surgery.  R. 24.  With regard to Dr. Hunt's opinions, the ALJ stated:

> little weight [is given] to Dr. Hunt's opinion, as it is not consistent with his own treatment notes, which indicate that he diagnosed the claimant with early degenerative changes and did not record any significantly abnormal objective findings to support a conclusion that the claimant cannot work.  Further, Dr. Hunt did not offer any rationale for his opinion; rather, it appears to be based primarily on the claimant's subjective reports.  Additionally, it is noted that Dr. Hunt is a general practitioner, and not a specialist in the area of neurology or orthopedics.

R. 25.  Thus, the ALJ gave little weight to Dr. Hunt's opinions because they were not consistent

with his treatment notes; Dr. Hunt did not offer a supporting rationale; Dr. Hunt's opinions were

based primarily on Claimant's subjective reports; and Dr. Hunt is a general practitioner, not a

specialist.

With regard to Dr. Ahmar's opinions, the ALJ stated:

> Dr. Ahmar, in December 2008 [opined] that the claimant can work
> only 20 to 25 hours per week, and in March 2009 that the claimant
> "can only work on a limited time due to sustained injuries to her
> back."   The undersigned likewise gives these opinions little
> weight, as they are not consistent with Dr. Ahmar's recorded
> objective findings or the other findings of record and are not
> supported by the record as a whole, including the treatment history,
> as detailed above.

R. 25.  Thus, the ALJ gave little weight to Dr. Ahmar's opinions because they are not consistent

with her objective findings, other findings of record and are not supported by the record.  After

giving Drs. Hunt and Ahmar's opinions little weight, the ALJ gave "some weight" to Dr. Molis'

RFC assessment "to the extent it is consistent with the adopted [RFC], as it is largely consistent

with the objective findings of record and supported by the record as a whole."  R. 25.

Relying on the vocational expert's testimony, the ALJ found that Claimant can perform

her past work as a receptionist and town clerk.  R. 25-26.  Accordingly, the ALJ determined that

Claimant is not disabled.  R. 26.  On March 10, 2011, Claimant requested the Appeals Council

review the ALJ's decision.  R. 123.  On April 28, 2011, Claimant submitted additional medical

evidence for the Appeals Council to consider.  R. 466-81.  On January 12, 2012, the Appeals

Council denied review.  R. 1-7.  In its decision, the Appeals Council noted that Claimant was

determined to be disabled beginning February 11, 2011, based on an application filed on March

29, 2011.  R. 2.  The Appeals Council determined the additional medical evidence did not

warrant review of the ALJ's decision because it concerned a later time than that decided by the ALJ (i.e., after February 10, 2011).  R. 2.

## III.   LEGAL STANDARDS

### A.  THE FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.  REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991);

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

## IV.   <u>ANALYSIS</u>

Claimant raises three issues on appeal.  Doc. No. 18 at 1.  First, Claimant argues that the ALJ failed to articulate good cause for giving Drs. Ahmar and Hunt's opinions little weight. Doc. No. 18 at 11-19.  Second, Claimant argues that the ALJ failed to make findings of fact regarding the extent of her limitations in reaching handling, grasping and fine manipulation. Doc. No. 18 at 19-21.  Third, Claimant argues that the Appeals Council should have remanded the case to the ALJ based on the new and material evidence she submitted.  Doc. No. 18 at 21-24.  Claimant requests the Court reverse and remand the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  Doc. No. 18 at 24.[6]

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>.  *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  *Winschel*, 631 F.3d at

---

[6]  Claimant also requests the final judgment provide that any motion for attorney's fees, pursuant to 42 U.S.C. § 406(b) be "filed within thirty days of the date [Claimant's] counsel receives a letter from the Commissioner setting forth the amount of past-due benefits and the amount of the fee set aside for attorneys [sic] fees."  Doc. No. 18 at 24.

1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).   *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. Appx. 266, 269 (11th Cir. 2005).[7]  Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding or the opinion is conclusory or inconsistent with the opining doctor's medical records.   However, conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion.  *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to

---

[7] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

In the case at bar, the ALJ gave Dr. Hunt's opinions little weight because they were inconsistent with his treatment notes, as he only diagnosed Claimant with early degenerative changes, but "did not record any significantly abnormal objective findings to support a conclusion that the [C]laimant cannot work." R. 25.  The ALJ also gave Dr. Hunt's opinions little weight because he did not offer a supporting rationale, instead relying primarily on Claimant's subjective reports. R. 25.  Finally, the ALJ stated he gave Dr. Hunt's opinions little weight because Dr. Hunt is a "general practitioner, and not a specialist in the area of neurology or orthopedics." R. 25.

The ALJ does not identify what abnormal or significant objective findings that Dr. Hunt should have documented to support his opinions.  The ALJ likewise does not identify how Dr. Hunt's opinions are inconsistent with his treatment notes.  Although Dr. Hunt's treatment notes are sparse in both number and content, the Court cannot discern what, if any, inconsistencies exist between Dr. Hunt's opinions and his treatment notes.  Generally, when an ALJ fails to specifically articulate evidence contrary to a treating doctor's opinion, remand is required. *See Poplardo*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11.

The ALJ stated that Dr. Hunt did not support his opinions with objective findings or a supporting rationale.  This reason is plainly refuted by Dr. Hunt's RFC opinions.  In his April 29, 2009, RFC questionnaire, Dr. Hunt indicated that Claimant's degenerative disc disease was permanent and caused chronic pain in her upper extremities, lower back and down her legs.  R. 345.  Dr. Hunt further indicated that somatoform disorder, anxiety and emotional factors affect Claimant's physical condition, symptoms and functional limitations.   R. 345-46.   In his

November 16, 2009, RFC questionnaire, Dr. Hunt indicated that Claimant's degenerative disc disease will get worse over time and she experiences chronic parasthesia with symptoms of tenderness, muscle weakness, chronic fatigue, sensory changes, impaired sleep and reduced grip strength.  R. 424.  Dr. Hunt stated that depression, somatoform disorder, anxiety and emotional factors affect Claimant's physical condition, symptoms and functional limitations.  R. 425-26.  On June 15, 2010, Dr. Hunt indicated that Claimant's chronic degenerative disc disease was a permanent condition with a poor prognosis.  R. 430.  Dr. Hunt indicated that Claimant's symptoms include multiple tender points, chronic fatigue, morning stiffness, muscle weakness, panic attacks, anxiety, depression, chronic fatigue syndrome, numbness and tingling, and frequent, severe headaches.  R. 430.  Dr. Hunt noted that Claimant has daily migrating pain through her spine, shoulders, arms, hands, fingers, hips, knees, ankles and feet.  R. 431.  Dr. Hunt stated that stress, fatigue, static position, cold and movement cause Claimant pain, and due to Claimant's chronic pain she cannot maintain a competitive work situation.  R. 431.  Thus, Dr. Hunt provided diagnoses, objective findings, symptoms and other factors to support his RFC opinions.

The ALJ discounted Dr. Hunt's RFC opinions because he primarily relied on Claimant's subjective reports.  R. 25.  The fact "that a patient 'self-reports' symptoms is not, standing alone, a reason to discount a treating physician."  *Anderson-Wilson v. Astrue*, No. 1:11cv57–WCS, 2012 WL 161763 at *13 (N.D. Fla. Jan. 18, 2012).  Finally, the fact that Dr. Hunt is a general practitioner is not a valid basis to discount his opinions.  "Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas expertise more weight than non-specialists."  *Davis v. Barnhart*, 186 F. Appx. 965, 967 (11th Cir. 2006).  The ALJ does not indicate how Dr. Hunt's

opinions are outside the area of his expertise as a general practitioner.  The Court is unable to ascertain how Dr. Hunt's opinions are entitled to little weight because he is not a neurologist or orthopedist.  Rather, Dr. Hunt's opinions are entitled to substantial weight because he is an examining, treating physician unless the ALJ articulates good cause for not doing so.  *See Johnson*, 138 F. Appx. at 269.  The ALJ has not articulated good cause for giving Dr. Hunt's opinions little weight because none of the general reasons he referenced are supported by substantial evidence.

The ALJ gave Dr. Ahmar's opinions little weight because they were not consistent with her "recorded objective findings or the other findings of record and are not supported by the record as a whole, including the treatment history, as detailed above."  R. 25.  The ALJ did not indicate how Dr. Ahmar's opinions are inconsistent with either her objective findings or other findings in the record.  The Court is unable to discern what, if any, inconsistences exist between Dr. Ahmar's opinions, her objective findings and the other findings in the record.  Accordingly, these reasons are not supported by substantial evidence.  *See Poplardo*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand).[8]

To the extent the ALJ discounted Dr. Ahmar's opinions because Claimant's treatment has been conservative, consisting only of pain medications (*see* R. 24), this reason is unpersuasive.  Dr. Ahmar indicated that Claimant's degenerative disc disease was non-operable.  R. 296.

---

[8]  It is not uncommon for this Court to be presented with generalized statements from an ALJ that a treating physician's opinion, which contains limitations beyond those found by the ALJ, is inconsistent with their own treatment notes, unsupported by the record as a whole, or fails to document the type of findings one would expect if the claimant were disabled.  The Court has routinely rejected such generalized statements as conclusory and insufficient to meet the obligation to establish good cause for giving a treating physician's opinion less than substantial or considerable weight, as well as the obligation to state with particularity the weight given to the physician's opinion and the reasons therefor.  *Winschel*, 631 F.3d 1178-79.  When such generalized statements are unaccompanied by more specific statements and supporting record citations, the Court is unable to find that substantial weight supports the ALJ's decision.  *See id.*

Consequently, the fact that Claimant's treatment consisted solely of pain medications does not support a finding that Dr. Ahmar's opinions are unsupported by the record as a whole.  Further, the ALJ's statement that Dr. Ahmar's opinions are unsupported by the record as a whole, without identifying the specific facts to support such a statement, renders it impossible to determine whether the ALJ's reason is supported by substantial evidence.  *See Paltan*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").  Accordingly, the ALJ failed to articulate good cause for giving Dr. Ahmar's opinions little weight.

Based on the foregoing, the ALJ did not articulate good cause for giving Drs. Ahmar and Hunt's opinions little weight.  As Claimant requests, remand is appropriate.[9]

## V.  <u>CONCLUSION</u>

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g);

2. If, on remand, the Commissioner determines Claimant is disabled and entitled to benefits, Claimant may file her motion for attorney's fees, pursuant to 42 U.S.C. § 406(b) within thirty (30) days after Claimant's counsel receives a letter from the Commissioner setting forth the amount of past-due benefits and amount of the fee set aside for attorney's fees; and

3. The Clerk is directed to enter judgment for Claimant and close the case.

---

[9] The Court finds this issue dispositive and does not address Claimant's remaining arguments.

**DONE and ORDERED** in Orlando, Florida on February 15, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Chantal J. Harrington
1309-106 St. Johns Bluff Rd, N
Jacksonville, FL 32225

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Aaron M. Morgan
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224